## SOPHIA F. SCHWARTZE *vs.* THOMAS C. YEARLY.

*Evidence—Practice—Examination of Witnesses—Appeal—Principal and Agent—Real Estate Brokers—Agent.*

Where a witness on cross-examination gave an answer which was liable to be misunderstood, or was susceptible of two constructions, it was error in the Court to refuse to let her be asked on re-examination in chief, to state what she meant by the answer.

Where the defendant testified on her own behalf, and there was an apparent contradiction between what she stated on her examination in chief, and on her cross-examination, and she then offered to prove by a witness the same fact which she had testified to in her examination in chief, such evidence was clearly admissible, and the Court had no right to exclude it, on the assumption that the answer might contradict the plaintiff's own testimony.

The recalling of a witness, after the examination is closed, is a matter resting solely in the discretion of the Court, from the exercise of which no appeal will lie.

If a real estate broker fully discharges his duty, and performs all he undertakes to do, he is entitled to recover for his services, without regard to whether they were in fact beneficial, or of value to his principal.

If a broker introduces a purchaser, and such introduction is the foundation upon which the negotiations are begun and conducted, and the sale made, the agent will be entitled to his commissions.

But if the agency be revoked before the agent becomes so entitled to commissions, and the property be placed by the principal in the hands of another agent, and the latter employs the former agent to assist *him* in the sale, the principal is not liable.

The law exacts of the agent an honest and faithful performance of his duty, but it does not oblige him to misrepresent, or to conceal the truth. And if a statement thus fairly made operates to defeat the sale, it cannot be said that he has acted in bad faith towards his principal.

An agent, as a general rule, will not be permitted to act for both sides. But this rule does not prevent the agent, after his authority to sell has

been withdrawn, and another broker employed, from acting on behalf of persons holding other property in the vicinity, and advocating the superior advantages of such other property.

If there were a special contract, by which the broker was not to receive any compensation unless the property was sold at a stated price, he is not entitled to recover, unless the property was sold at that price, or unless he introduced a purchaser who was willing to buy, and was prevented from making the sale by the fault of the principal.

APPEAL from the Court of Common Pleas.

This was an action brought by the appellee in the Court of Common Pleas, in 1868, to recover the sum of $250, alleged to be due to him by the appellant, as compensation for his services in effecting the sale of certain land, in August, 1866, alleged by the appellee to have been sold through his efforts.

The defendant offered the following prayers:

1st. That although the jury believe from the evidence that the plaintiff was employed by the defendant to make the sale upon which this suit is based, and that the plaintiff introduced the parties who purchased the property in question, yet the plaintiff is not entitled to recover from these facts alone, nor at all, unless the jury shall also believe from the evidence that such introduction made by the plaintiff was of service to the defendant in making the sale.

2d. That if the jury believe from the evidence, that prior to the commencement of the negotiations, which led to the sale upon which this suit is based, the plaintiff's authority to sell had been revoked by the defendant, which revocation need not be express, but may be inferred by the jury from the circumstances, and the property in question withdrawn from the plaintiff, placed for sale in the hands of C. I. Ditty, as the defendant's agent, and that there was no subsequent employment of the plaintiff by the defendant, other than by a reference to the said Ditty, then the plaintiff, although employed by Ditty, is not entitled to

recover, unless the jury also believe that Ditty was expressly authorized by the defendant to employ the plaintiff in his name.

3d. That although the jury shall believe from the evidence that the plaintiff was employed by the defendant, either directly or through an agent authorized to delegate his authority, the plaintiff is not entitled to recover, unless the jury also believe that the plaintiff did occupy his time and render services in effecting said sale by the defendant, and that said sale was finally effected by the defendant in consequence of the services of the said plaintiff, and that the plaintiff's agency was the immediate procuring cause of said sale by the defendant; and in determining whether or not the plaintiff rendered services to the defendant in effecting said sale, and whether the plaintiff's agency was such procuring cause of said sale, the jury may consider the natural and probable effect, independent of the plaintiff, upon the minds of the purchasers introduced by the plaintiff, of public notices for sale, calculated to draw the attention of the said purchaser, set up on the property in question, should the jury find that such notices were set up by other parties than the plaintiff, or those acting under him; and that generally in determining the character of the plaintiff's services and agency in this matter, the jury may consider all facts and circumstances proved by the evidence tending to show the operation in effecting the sale in question of other influences, unmixed with and distinct from the agency of the plaintiff.

4th. That if the jury find from the evidence that between the opening of negotiations and the final sale of the defendant's property, the plaintiff, by comparisons unfavorable to the defendant's property, was endeavoring to induce the purchasers whom he had introduced, and who eventually bought the defendant's property, to buy other property instead, or that the plaintiff made any statement

or representation to the said purchasers, tending to induce them to buy other property rather than the defendant's, then the plaintiff is not entitled to recover.

5th. That although the jury shall believe from the evidence that the plaintiff was employed by the defendant to effect the sale in question, and introduced the parties who eventually bought the property, yet the plaintiff is not entitled to recover, if the jury also believe that the sale was effected in consequence of other influence, unmixed with and entirely different from what was furnished by the introduction of the said purchasers to the defendant by the plaintiff.

6th. That although the jury shall believe from the evidence that the plaintiff was employed by the defendant to effect the sale in question, if the jury shall also believe that prior to the commencement of negotiations, the purchasers introduced by the plaintiff, and who bought the property, had themselves employed the plaintiff to procure for them such property as they required, and that the plaintiff, in pursuance of the employment, commenced to treat with the defendant for the purchase of the property; or if the jury shall believe that at any time during the pendency of the negotiations, the plaintiff was, in respect to this purchase and sale, in any way in the employ, or acting as agent, of the said purchasers, (beyond the power or authority to bind them to a sale by a memorandum,) or that the plaintiff was acting in the interest of the said purchasers, then the plaintiff is not entitled to recover, whether the said purchaser directed the plaintiff to treat specially for the purchase of defendant's property or not.

7th. If the jury shall believe from the evidence that the plaintiff's authority was revoked, and the property withdrawn from him and placed in the hands of C. I. Ditty for sale, as set forth in the defendant's second prayer, and that there was no subsequent employment of the plaintiff by the defendant, except through the said Ditty,

and that Ditty expressly declared to the plaintiff that he was only authorized to sell at $1,000 per acre, and that a special contract and agreement was then made between the plaintiff and Ditty, by which the plaintiff was to receive $250 commission, provided he procured a purchaser at $1,000 per acre, then the plaintiff is not entitled to recover, unless the jury also find that he did introduce a purchaser at the price named, and that a sale at that price was prevented by fault of the defendant, although the jury find that the parties introduced by the plaintiff, in pursuance of said contract, did actually purchase the property in question, at $900 per acre.

8th. That if the jury shall believe from the evidence that the plaintiff was not employed by the defendant, except by a special contract, by which the plaintiff was only authorized to sell at $1,000 per acre, and was to receive a commission of $250 in case he made sale at that price, then the plaintiff is not entitled to recover unless he made sale at that price, although the jury believe that he introduced the parties who subsequently bought the property in question at $900 per acre.

The Court (GAREY, J.,) granted the fifth prayer and rejected the others; to this ruling of the Court, as also to its rulings upon the questions of evidence, noticed in the opinion of this Court, the defendant excepted, and the verdict and judgment being against her, she prosecuted this appeal.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ROBINSON, J.

*George T. Beall, Jr.,* and *Wm. Shepard Bryan,* for the appellant.

*Spottswood Garland* and *Albert Ritchie,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This suit was brought to recover for services rendered as a real estate broker, in the sale of certain property belonging to the appellant.

One of the questions at issue upon the trial below was the revocation of the plaintiff's agency, prior to the commencement of negotiations, which resulted in the sale of the property.

There was an apparent contradiction between what the appellant said in her examination in chief, and on her cross-examination, as to whether she authorized Mr. Ditty to take the property out of the hands of the appellee, or to get the plat only.

At the close of a long cross-examination, the counsel for the appellee asked the following questions:

" Then the sum and substance of the whole matter is, that you only sent Mr. Ditty to get the plat from Mr. Yearly?"

To this the witness replied:

" Yes, sir. I sent him to get the plat, and take it out of the hands of Mr. Yearly, and do the best he could with it, as it had been in Mr. Yearly's hands for two years, and he had done nothing with it."

Now this answer, it is evident, was liable to be misunderstood, or susceptible of two constructions.

The " Yes, sir," might be taken as assent to the affirmative of the whole question, whilst the rest of the answer might be construed as meaning both the plat and property, which she directed Mr. Ditty to take out of the hands of the witness. Under these circumstances, it was the privilege of the counsel to ask the witness to explain what she meant, or to state what she authorized Mr. Ditty to do.

This was due to the witness, in order that she might state more explicitly what she had said to Ditty, and eminently proper, in order that the jury might understand the true import of her testimony.

We are not to be understood, however, as interfering in the least with that discretion which ordinarily rests with the Court in arresting a cross-examination unnecessarily protracted, or in refusing to permit the same question to be put over and over again to the witness.

But in this case, in view of the uncertain and ambiguous response of the witness, and its just liability to be misunderstood by the jury, we think the Court erred in refusing to allow the counsel to ask what the witness authorized Mr. Ditty to do.

In no just sense could it be termed a leading question, which suggested the answer desired; nor did it embody a material fact, which admitted of an answer by a simple negative or affirmative.

The defendant then offered to prove by Mr. Ditty that he told the appellee, he, the witness, was authorized to withdraw the property from his hands, and revoke the agency.

This evidence was clearly admissible, and the Court had no right to exclude it, upon the assumption that the answer might contradict the testimony of the appellant. In her examination in chief, she certainly had testified that Ditty was authorized to withdraw the property, and take it out of the hands of Yearly. If there were anything upon her cross-examination in contradiction of this statement, it was a matter to be left to the jury.

The recalling of a witness, after the examination is closed, is a matter resting solely in the discretion of the Court, from the exercise of which no appeal will lie. The fourth bill of exceptions is not therefore before us for review.

This brings us to the law of the case.

The first prayer of the defendant was certainly objectionable. The connection in which the word service is used makes its meaning liable to a misapprehension, and well calculated to mislead the jury. If it were intended

to convey the idea that the jury must believe that the sale was *beneficial* to the appellant, or that the services of the broker were of value to her, then it is obviously wrong. If the appellee fully discharged his duty, and performed all he undertook to do, he was entitled to recover, and that too without regard to whether his services were in fact beneficial, or of value to the appellant.

The second prayer was also properly rejected. It is a mistake to suppose that a party can revoke the agency in all cases and under all circumstances, prior to the commencement of the negotiations. If the broker introduces a purchaser, and such introduction is the foundation upon which the negotiations are begun and conducted, and the sale made, the agent will be entitled to his commissions. *Keener vs. Harrod & Brooke,* 2 *Md.,* 196. With this qualification, we see no objection to the prayer. If the agency had been revoked before the appellee became entitled to compensation, under the rule of law as above stated, and the property placed by the appellant in the hands of Mr. Ditty, and he had employed the appellee to assist him in the sale, then of course the defendant was not liable.

The Court committed no error in rejecting the third prayer. The plaintiff's right to recover did not depend upon the *natural* and *probable* " effect," which notices set up on the premises might have upon the mind of the purchaser. The jury were properly spared the consideration of this rather difficult and uncertain inquiry.

The proposition of law, which the fourth prayer was intended to assert, is too broadly stated. The law, it is true, exacts of the agent an honest and faithful performance of his duty, but it does not oblige him to misrepresent or to conceal the truth. And if a statement thus fairly made operates to defeat the sale, it cannot be said that he has acted in bad faith towards his principal.

The sixth prayer is liable to the same objection. An agent, as a general rule, will not be permitted to act for

both sides. It is a difficult matter to serve two masters, and the law will not permit an agent to assume relations so essentially inconsistent and repugnant to each other. But this prayer does not restrict the finding of the supposed bad faith to the time during which the appellee was in the employ of the appellant. It says "at any time during the negotiations."

The seventh prayer was also properly refused, for the reasons assigned in the consideration of the second prayer.

To the latter part of the prayer, we see no objection. If there were a special contract, by which the appellee was not to receive any compensation, unless the property was sold at a stated price, he was not entitled to recover, unless the property was sold at that price, or unless he introduced a purchaser who was willing to buy, and was prevented from making the sale by the fault of the defendant.

The eighth prayer was defective, because it denied the plaintiff's right to recover, unless he made the sale at the specified price, although he may have introduced a purchaser, willing to buy, and was prevented from making the sale by the fault of the defendant.

Being of opinion that the rulings of the Court were erroneous in the second and third bill of exceptions, the judgment must be reversed, and a procedendo awarded.

*Judgment reversed, and procedendo awarded.*

(Decided 2d July, 1869.)