(Opinion published 52 N. W. Rep. 131.)

---

MERCHANTS' INS. CO. OF NEWARK, N. J., *vs.* JOHN S. PRINCE *et al.*

Argued April 29, 1892. Decided May 24, 1892.

**Custom—Modifying Contract.**

> A local custom that insurance agents, after the termination of their agency, may cancel any of the policies issued through them, is unreasonable, subversive of the principles upon which the rules of law governing the relation of principal and agent are based, and is void.

Appeal by plaintiff, the Merchants' Insurance Company of Newark, N. J., from an order of the Municipal Court of the City of St. Paul, *Twohy,* J., made August 6, 1891, denying its motion for a new trial.

The defendants, John S. Prince and John C. Shandrew, were local agents at St. Paul for the plaintiff, and were engaged in soliciting and writing fire insurance for it. On April 8, 1890, plaintiff canceled their agency. Defendants thereupon proceeded to cancel the business for the preceding month, and take it from the plaintiff company to other companies, and to take up and return to plaintiff the policies as untaken. They claimed the right to take up policies that had been issued since their last report, and to give the risk to

some other company represented by them. Plaintiff denied this claim, and brought suit for the premiums that had been paid in to the defendants on these risks. Defendants claimed there was a custom in St. Paul for a discharged insurance agent to do this. The defendants had judgment in the Municipal Court, and plaintiff moved for a new trial. Being denied, it appealed.

*Morphy, Gilbert & Morphy* and *Homer C. Eller*, for appellant.

A contract cannot be modified or affected by a custom or usage unless such custom or usage prevailed at the time the contract was made. It is the condition of things existing at the time the contract was made, not something that may arise subsequently, that fixes the rights of the parties under it. *Walker* v. *Barron*, 6 Minn. 508, (Gil. 353;) *Taylor* v. *Mueller*, 30 Minn. 343; *Collins* v. *New England Iron Co.*, 115 Mass. 23; *Lamb* v. *Henderson*, 63 Mich. 302; *Walls* v. *Bailey*, 49 N. Y. 464; *Flatt* v. *Osborne & Co.*, 33 Minn. 98; *Thompson* v. *Minneapolis & St. L. R. Co.*, 35 Minn. 428.

The defendants claim to cancel and take up their principal's contracts of insurance, not in the interest of their principal, but for their own purposes, and to advance their own interests, thereby depriving their principal of the earnings it was entitled to, and injuring its business. They claim to do this through the operation of an alleged local custom not shown to exist at the time the contract was made. To constitute such a custom the usage must be established, certain, uniform, general, known, and reasonable. It must not be in conflict with rules of law or public policy. *Janney* v. *Boyd*, 30 Minn. 319; *Porter* v. *Hills*, 114 Mass. 106 ; *Citizens' Bank* v. *Grafflin*, 31 Md. 507; *Randall* v. *Smith*, 63 Me. 105; *Pevey* v. *Schulenburg & B. Lumber Co.*, 33 Minn. 45; *Strong* v. *Grand Trunk R. Co.*, 15 Mich. 206.

If on a given state of facts the rights and liabilities of the parties to a contract are fixed by the general principles of common law, they cannot be changed by any local custom of the place where the contract was made. *Johnson* v. *Gilfillan*, 8 Minn. 395, (Gil. 352 ;) *Globe Milling Co.* v. *Minneapolis Elevator Co.*, 44 Minn. 153; *Larson* v. *Ring*, 43 Minn. 88; *Dickinson* v. *Gay*, 7 Allen, 29 ; *Raisin* v. *Clark*, 41 Md. 158; *Farnsworth* v. *Hemmer*, 1 Allen, 494.

The custom sought to be established in the present case is in direct conflict with the fundamental rules of law applicable to principal and agent. It authorizes the agent to destroy what already belongs to the principal. It declares that he shall have authority to do this, not for the benefit of the principal, but for the benefit of the agent.

*Morris & Williams,* for respondents.

The existence of the usage, and whether knowledge of it exists in any particular case, are questions of fact for the jury. *Walls* v. *Bailey,* 49 N. Y. 464; *Burroughs* v. *Langley,* 10 Md. 248; *Lewis* v. *Marshall,* 7 Man. & G. 729.

A usage or custom may be general as this term is used, notwithstanding it is confined to a particular city. It may be generally known in that city, and be understood by all persons dealing there, and yet may not exist in any place beyond. *Taylor* v. *Mueller,* 30 Minn. 343; *Gleason* v. *Walsh,* 43 Me. 397; *Thompson* v. *Hamilton,* 12 Pick. 426.

A custom is not unreasonable merely because it is contrary to a particular rule or maxim of the common law. A custom is not bad simply because it alters an established rule. Lawson, Customs, 64.

GILFILLAN, C. J. This is an action by an insurance company against its agents for premiums alleged to have been received by them on policies issued by it through them as its local agents in St. Paul. It is conceded that the authority of the defendants as agents was terminated by plaintiff in the spring of 1890, though there seems some question as to the exact date of the withdrawal of authority. They had been its local agents some ten years. The real controversy in the case is upon the claim of defendants to a right, after their agency was terminated, to cancel policies issued by it through them within a certain period, say since the date of their last report to the company; not to cancel them for the benefit of the company, or because its interest might require it, but to do so in their own interest, and so that they might turn over the insurance represented by the policies to some other company of which they

might have the agency. There was no attempt to prove any express contract between the plaintiff and defendants to continue the authority of the latter to cancel policies after the termination of their agency generally. But that right or authority is claimed by reason of an alleged custom in the insurance business in St. Paul. Evidence to prove such a custom was introduced by defendants.

The plaintiff makes the point that the evidence was not sufficient to establish such a custom. We will not, however, consider that point, but come to the question presented by an instruction to the jury pursuant to the defendants' fifth request, as follows: "If you find from the evidence that it was a common, recognized custom in St. Paul at the time here in question that, upon the change of agency, the retiring agent canceled and took up all policies already paid for if he saw fit, as a part of the closing of the agency, you will find for the defendants as to those policies." The custom referred to is characterized in defendants' fourth request, likewise given and excepted to, thus: "That agents, in case of change in agency, considered the business worked up and secured by them belonged to them, to the extent that, at least, took up all policies issued or delivered since the making of the last correct report pending the change of agency." As one of the witnesses for the defendants testified, the agent generally considers the business he works up as his own, and does with it as he sees fit. The proposition that any part of the business done by an agent for his principal, and for doing which the principal pays him, belongs to the agent, rather upsets our notions of the rights growing out of the relation of principal and agent. Is such a local custom valid? Is it reasonable? For, if unreasonable in the legal sense, it is not valid. While a custom may not be reasonable merely because it is not contrary to any established rule of law, there is a uniform concurrence of authorities that, in the legal sense, it is to be deemed unreasonable if it be opposed to the policy of the law, as where it tends to unsettle well-established rules of law, established for the protection of the rights of parties. Thus of a usage that a factor may pledge the goods of his principal, (*Newbold* v. *Wright*, 4 Rawle, 195;) that the master of a vessel may sell the cargo without necessity, (*Bryant* v. *Commonwealth Ins. Co.*, 6 Pick. 131;) to charge

interest where the statute provides none shall be charged, (*Henry* v. *Risk*, 1 Dall. 265;) authorizing a landlord to re-enter for a forfeiture in a manner different from that provided by law, (*Stoever* v. *Whitman*, 6 Bin. 417;) requiring 2,240 pounds for a ton when the statute provides 2,000 pounds shall be a ton, unless otherwise specified in the contract, (*Evans* v. *Myers*, 25 Pa. St. 114; *Green* v. *Moffett*, 22 Mo. 529;) that when a seller of goods receives the consignee's note without the buyer's indorsement, the latter is discharged, and the maker of the note alone is responsible, (*Prescott* v. *Hubbell*, 1 McCord, 94;) so of a usage contrary to the rule *caveat emptor*, (*Barnard* v. *Kellogg*, 10 Wall. 383; *Dickinson* v. *Gay*, 7 Allen, 29.) The cases of *Johnson* v. *Gilfillan*, 8 Minn. 395, (Gil. 352,) and *Globe Milling Co.* v. *Minneapolis Elevator Co.*, 44 Minn. 153, (46 N. W. Rep. 306,) are in the same line. These are but a few of the cases that might be cited to the same effect. But where the rule of law is established, not merely to define the rights of parties under particular circumstances, but to protect those rights by enforcing good faith and fair dealing between them, the reason for excluding local usage to the contrary of the rule is still stronger. The requirement of good faith is the basis of the rules of law governing the duties of an agent to his principal. The agent is held to the utmost good faith in the business of his principal, and, to secure this, he is not permitted to place himself in a position antagonistic to the interest of his principal, nor to secure any advantage to himself from the business without the full and free consent of the principal. It was because such a usage would tend to subvert this principle of the law of agency it was held in *Farnsworth* v. *Hemmer*, 1 Allen, 494, and *Raisin* v. *Clark*, 41 Md. 158, that a usage permitting an agent employed to sell or exchange property to take commissions from both seller and buyer was void.

There could be no question that, pending his agency, an agent of an insurance company authorized to issue policies cannot, without the consent of the company, treat the business represented by policies issued through him as in any sense his business, or the business of any one but his principal; and, if he has authority to cancel policies, he could only exercise it for the benefit of his princi-

pal. A usage that he might cancel policies for his own advantage would be so subversive of all the principles underlying the rules of the law of agency as to be void. Defendants do not claim otherwise. Their claim amounts really to this: that by the usage, upon the revocation by the company of the revocable authority conferred on the agent, a part of the business, conceded to be that of the company up to that time, becomes the business of the agent, so that he may do with it what he pleases, and that as to that part of the business the revocation clothes him with power that he did not have before. The proposition would justify a custom that any agent, as soon as his authority should be withdrawn, might at once, for his own advantage, undo, so far as it could be undone, all the business that he had done for his principal.

The rules of law established to secure and enforce good faith in fiduciary relations are so necessary and so salutary that no local custom to the contrary can be sustained.

Order reversed.

(Opinion published 52 N. W. Rep. 131.)