## HARDY ET AL. *v.* DAVIS

[No. 3, September Term, 1960.]

230

*Decided October 12, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Russell Hardy, Jr.,* with whom was *Russell Hardy, Sr.,*
*pro se,* on the brief, for the appellants.

*Frank P. Flury* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

In April 1955, appellants, the owners of a dwelling, em-
ployed the appellee, a real estate broker, to effect its sale. He
sold it for $16,950, of which a deposit of $50.00 was paid
when purchasers signed the contract; $450.00 was to be paid
after the owners signed the contract; $11,000 was to be pro-
vided by a first trust lender, and the balance of $5,450 was to
be in the form of two promissory notes of the buyers in the
amount of $2,725 each, secured by a second deed of trust.

After the contract was signed by both owners and buyers,
the broker lent the buyers $205 of the $450 payment, and
thereafter lent them $432.25 to pay part of the settlement ex-
penses. The owners were not told, and did not learn, of these
loans until some time after the settlement. The purchasers
did not meet the payments due under the first or second trusts
(the broker says this was because the owners did not deliver
a valid deed, and in writing ordered buyers to move from the
property some three months after the settlement) and the
property was sold under the first trust. The owners neither
foreclosed the second trust nor bid up the property at the sale
under the first trust in order to protect their interest.

In March 1959, the owners sued the broker for breach of his alleged duty to disclose to them the making of the loans to the buyers, claiming damages for the difference between the sales price of the house and the amount of the sales price they had actually received. The broker filed a plea of limitations, general issue pleas, a plea of res judicata by reason of a prior suit by the owners against him for a claimed violation of his obligations as agent, in which the broker prevailed, and a plea on the equitable grounds that the owners were estopped because any losses suffered by them were "the direct and proximate result" of their failure to deliver the deed, and in ordering buyers to vacate prior to default.

The broker moved for summary judgment and filed a supporting affidavit. The owners filed contravening affidavits which, aside from statements designed to refute the defense of limitations, essentially were claims that had they known prior to "the transfer of title" that the broker had made the loans to the buyers they would "have realized" the buyers would default, and would have rescinded the contract of sale.

The trial court granted the broker's motion for summary judgment on the ground there was no breach of duty. We agree and therefore do not reach the questions of limitations, res judicata or the cause or mitigation of damages.

The owners concede the broker's assertion that he procured a report from a national credit reporting agency which showed that the buyer held a permanent job as designer with an engineering company, that he had a good record and was a good credit risk, as well as that the broker had no knowledge, or reason to know, the buyers would not make payments as agreed, and no reason to anticipate before the contract was signed that they would seek a loan from him or anyone else.

During the term of the agency, a real estate broker cannot act for both vendor and vendee in respect of the same transaction because of possible conflict between his interest and his duty in such case, and he must disclose to his principal all facts or information which may be relevant or material in influencing the judgment or action of the principal in the matter. *Coppage v. Howard,* 127 Md. 512, 523; *Restatement (Second), Agency* Sec. 381.

It has been opined, and held, that the fact a broker lends money to the purchaser to help consummate the sale he has arranged, does not make him the purchaser's agent and does not constitute action adverse to his principal, the seller. "An agent can properly deal with the other party to a transaction if such dealing is not inconsistent with his duties to the principal. Thus, an agent employed to sell can properly lend money to the buyer to complete the purchase * * *." *Restatement (Second), Agency* Sec. 391, Comment b. To the same effect are *Goodson v. Embleton* (Kan. City Ct. of App.), 80 S. W. 22, 24; *Hall v. Williams* (Mo.), 50 S. W. 2d 138. Compare *Helwig v. Fogelsong* (Iowa), 148 N. W. 990; *Lawson v. Thompson* (Utah), 37 P. 732.

The owners argue that even if it be conceded that a broker employed by the seller properly may lend money to the buyer to complete the contract, the fact that he does is material and must be disclosed to the seller. It may be assumed that this would be a sound proposition if the loan or the agreement to loan was made before the contract was signed but that is not the situation in this case. Here, it is conceded that not until after the signing of the contract did the broker have information as to the buyers' financial status not known equally well to the owners and, also, that he acted fairly and frankly up to the signing.

The rule is that after the agency has terminated, the obligations the agent bears during the agency, including the duty of disclosure, generally no longer exist.[1] The books spell out the accepted rule that an authority created to perform a specific act or accomplish a particular result is terminated when the purpose which called it into being is achieved. *Mechem, Agency* (2nd Ed.), Secs. 552b, 553. Thus, where an agent, employed to sell property, has procured a purchaser and the

---

1. An agent may be under a duty to give information to his principal after the termination of his relationship, as where he does not account to the principal until such time. Restatement (Second), Agency Sec. 381, Comment f; Sec. 382d. The agent has a continuing duty not to take advantage of a still subsisting confidential relation created during the prior agency relation or acknowledged thereafter. Restatement (Second), Agency Sec. 396.

sale has been made, absent particular agreement to the contrary or unusual circumstances, the agency is terminated and the agent is free to act for himself or the opposing party as long as he does not hinder, delay or interfere with the sale which has been entered into by the seller and the purchaser. An instruction to this effect, in a case where a broker originally employed by the seller represented the purchaser at the settlement, was approved in *Mayne v. Big,* 215 Md. 270, 282, because the instruction "\* \* \* relates only to actions subsequent to the signing of the contract." In *Owners Realty Co. v. Cook,* 123 Md. 1, 4, the broker was a lawyer and the buyer he produced was his father. After the contract was signed, the broker examined the title as lawyer for his father, the purchaser. He raised several questions which did not appear unreasonable or designed to avoid the sale. The general rule against dual representation during the agency was recognized but found inapplicable because when the contract was reduced to writing "The sale was then virtually accomplished and the agency of the appellee for that purpose was at an end. There was no subsisting or continuing duty with which his subsequent service to the purchaser was in conflict." The Court concluded: "The agencies he accepted for the parties to the sale were successive and not simultaneous."

Cases in other states that hold the agency terminates when the contract is signed and that the agent is thereafter free to act in ways that might otherwise be adverse to his principal, include *Moore v. Stone,* 40 Iowa 259; *Short v. Millard,* 68 Ill. 292; *Cockrell v. Maxcey* (Tex. Civ. App.), 202 S. W. 2d 293; *Jones v. Allen* (Tex. Civ. App.), 294 S. W. 2d 259.

We see nothing in the case to vary the usual rule that the agency terminated when the purpose for which it was created was accomplished—when the sale was made and the contract evidencing it was signed. Thereafter, the broker no longer had any "subsisting and continuing duty" (to use the words of the Owners Realty Co. case, *supra*) to disclose the making of the loans to the buyers to enable them to complete the purchase, since the loans did not hinder, delay or interfere with, but rather facilitated, the consummation of the sale.

*Judgment affirmed, with costs.*